UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

HENRY P. OSET,

*Plaintiff-Appellee,*

v.

INTERSTATE BROKERAGE OF THE
SOUTHEAST, INCORPORATED,

*Defendant-Appellant.*

No. 00-1029

HENRY P. OSET,

*Plaintiff-Appellant,*

v.

INTERSTATE BROKERAGE OF THE
SOUTHEAST, INCORPORATED,

*Defendant-Appellee.*

No. 00-1109

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-99-185-5-BO)

Argued: November 3, 2000

Decided: December 19, 2000

Before WIDENER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Margaret Cain Lumsden, UNTI, LUMSDEN & SMITH, P.A., Raleigh, North Carolina, for Appellant. Steven Jay Vining, GLASS & VINING, L.L.C., Cary, North Carolina, for Appellee. **ON BRIEF:** Sharon L. Smith, UNTI, LUMSDEN & SMITH, P.A., Raleigh, North Carolina, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Henry Oset sued Interstate Brokerage of the Southeast, Inc. (IBS), alleging violations of the North Carolina Business Opportunities Sales Act (BOSA) and Unfair and Deceptive Trade Practices Act (UDTPA). He sought a refund of the purchase price he paid under a licensing contract for a coffee service business. The district court entered summary judgment in favor of Oset and awarded him treble damages in the amount of $66,897. The court denied Oset's motion for attorneys' fees. We affirm these decisions.

I.

The essential facts are undisputed. In the winter of 1997-1998 Oset became interested in starting a business in Raleigh, North Carolina, because he and his family wanted to move there from New York. Oset learned that IBS, a franchise broker located in Florida, was offering business opportunities in North Carolina. In his first telephone conversation with an IBS representative, Oset learned that the business opportunity involved purchasing, locating sites for, and servicing automated espresso/cappuccino machines placed mainly in hotels and restaurants. Oset told IBS that he was interested in running a business only in the Raleigh area.

In March of 1998 IBS sent Oset written materials describing the business offering in greater detail. A letter introducing the materials said that IBS's business offering is "most profitable" and that its marketing techniques "generate[ ] excellent revenue potential." The materials described IBS's five-day training program in which IBS representatives offer investors "suggestions for acquiring accounts" and "personally assist the Purchaser in acquiring and installing their first five (5) machines." The materials illustrated various earnings scenarios. A disclaimer noted that there were no guarantees of income and that the earnings computations were not meant as forecasts of income.

On March 24, 1998, Oset submitted an application to IBS, indicating his exclusive interest in the Raleigh area. An IBS sales representative went to Oset's home in New York on March 26, 1998, where Oset and the representative signed a licensing contract. The contract stated that Raleigh was Oset's "area of primary responsibility." Oset paid IBS a total of $22,299, a purchase price of $18,799 and $3,500 for the training course.

An IBS representative gave Oset his training course in Raleigh, and the company representative helped Oset find initial locations for the coffee machines. IBS sent all of the machinery and supplies that Oset needed to North Carolina. About two months into operations, Oset realized that the business was not as profitable as he believed IBS had suggested. Oset contacted George Fry, president of IBS, to request a refund, but Fry refused the request.

Oset then sought the assistance of the North Carolina Attorney General's office, which wrote IBS two letters stating that Oset was entitled to void the licensing contract because IBS had failed to comply with BOSA's disclosure and registration provisions. *See* N.C. Gen. Stat. § 66-100(a). The statute requires sellers of business opportunities to provide to purchasers a disclosure statement that conforms to the specifications laid out in BOSA. The disclosure statement, which is to be filed with the North Carolina Secretary of State, must contain certain information about the seller and suggest that purchasers should seek the advice of a lawyer before entering into the deal. *See* N.C. Gen. Stat. §§ 66-95, 66-97. BOSA also mandates that business opportunity contracts inform the purchaser that the North Caro-

lina Secretary of State has been designated as the seller's agent for service of process, as required by another provision of the statute. *See* N.C. Gen. Stat. §§ 66-97, 66-99. In response to the Attorney General's letter, IBS did not dispute that it had not complied with BOSA. Instead, it asserted that North Carolina law did not apply. The Attorney General's office did not pursue the matter further.

In February 1999 Oset filed a complaint against IBS in Wake County Superior Court, alleging violations of BOSA and UDTPA and seeking to void the licensing contract. Because there is diversity of citizenship, IBS removed the action to the Eastern District of North Carolina. IBS then moved to dismiss on the ground that neither BOSA nor UDTPA apply to a licensing contract entered into in New York. IBS also moved to strike two paragraphs of Oset's complaint, claiming that one of the paragraphs contains information that is the subject of privileged settlement negotiations and that the other inappropriately characterizes IBS's litigation position. Oset moved for summary judgment and for attorneys' fees.

The district court denied IBS's motion to dismiss, holding that IBS cannot rely on the rule that the law of the place of execution of a contract applies because the complaint does not allege a breach of the licensing contract or raise a dispute about the meaning of its terms. Rather, the complaint alleges violations of BOSA and UDTPA occurring in North Carolina. The district court also denied IBS's motion to strike because Oset's complaint did not contain inappropriate or privileged information. The district court then granted Oset's motion for summary judgment, concluding that there was no dispute that IBS had sold Oset a "business opportunity" as defined by BOSA and that IBS had failed to comply with BOSA's registration and disclosure requirements. Oset was therefore awarded a refund of the contract price, the remedy provided for in BOSA. Because a violation of BOSA constitutes an unfair trade practice, the district court trebled Oset's damages under UDTPA. *See* N.C. Gen. Stat. §§ 66-100(e), 75-16. The court denied Oset's motion for attorneys' fees, however, because Oset did not show that IBS's violations were willful or that its refusal to settle the matter was unwarranted. IBS appeals the denials of its motions to dismiss and to strike and the grant of Oset's motion for summary judgment. Oset appeals the denial of attorneys' fees.

## II.

After reviewing the briefs and the joint appendix and considering the oral arguments of counsel, we are persuaded that the district court reached the correct result. Accordingly, we affirm substantially on the reasoning of the district court. *See Oset v. Interstate Brokerage of the Southeast, Inc.*, No. 5:99-CV-185-BO(2) (E.D.N.C. Nov. 30, 1999).*

*AFFIRMED*

---

*IBS contends that it was not allowed to discover whether Oset made any profit in the coffee service business. Thus, IBS says that awarding Oset a refund of the contract price might result in unjust enrichment to him, in violation of BOSA. *See* N.C. Gen. Stat. § 66-100(a) ("[The] purchaser shall not be entitled to unjust enrichment by exercising the remedies provided in this subsection."). We reject IBS's unjust enrichment argument. "Unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Am. Jur. 2d Restitution and Implied Contracts* § 3 (1973). There is no suggestion that Oset did not return the machines and any unused supplies to IBS. Under BOSA, therefore, Oset is "entitled to receive from the business opportunity seller [IBS] all sums paid to the business opportunity seller." N.C. Gen. Stat. § 66-100(a). BOSA's language does not indicate that IBS is entitled to an offset for any net earnings Oset might have realized from his work in the coffee service business.